**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALFRIEDA SHEPARD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BMO HARRIS BANK, N.A., and KFORCE FLEXIBLE SOLUTIONS, LLC, | ) ) ) | JURY DEMANDED |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Alfrieda Shepard, individually and on behalf of all other persons similarly situated, known and unknown, through her attorneys, complains against Defendants BMO Harris Bank, N.A. and Kforce Flexible Solutions, LLC (collectively, "Defendants"), as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA"), for Defendants' failure to pay Plaintiff and other similarly situated persons all earned regular and overtime pay for all time worked.

2.      Defendants employ the telephone-based workers who are the putative class members in this lawsuit.

3.      Defendants knowingly required and/or permitted Plaintiff, who worked as a telephone-dedicated employee, and other similarly situated telephone-dedicated employees, to perform unpaid work before and after the start and end times of their shifts, including but not

limited to booting up computers, initializing several software programs, and reading company issued emails and instructions.

4.    The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately 15 minutes per day per person.

5.    Plaintiff brings her FLSA overtime claims as a collective action pursuant to 29 U.S.C. 216(b) on behalf of telephone dedicated employees who worked for Defendants in the United States. Plaintiff brings her IMWL overtime claims and IWPCA unpaid wage claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Illinois telephone dedicated employees.

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7.    This Court has supplemental jurisdiction over all class claims in this action under 28 U.S.C. § 1367.

## THE PARTIES

8.    Plaintiff Alfrieda Shepard is an individual who Defendants employed from approximately June 2014 to approximately August 2015 as an hourly, non-exempt telephone-dedicated employee who Defendants hired to work in a call center operated by BMO Harris Bank located in Naperville, Illinois.  Plaintiff Shepard resides in and is domiciled within this judicial district.  A copy of Plaintiff's consent form is attached hereto as Exhibit A.

9.    Defendant BMO Harris Bank, N.A. ("BMO Harris") is a banking and financial services company that operates call centers in the United States, including in Naperville, Illinois and Brookfield, Wisconsin, where telephone-dedicated hourly employees handle phone calls

regarding banking and financial services.

10.    Defendant BMO Harris is a United States bank based in Chicago, Illinois. BMO Harris is qualified to do business in Illinois. BMO Harris operates branches in the states of Illinois, Indiana, Arizona, Missouri, Minnesota, Kansas, Florida and Wisconsin. BMO Harris has over 650 branches and employs approximately 14,500 individuals in the United States.

11.    The Bank of Montreal owns BMO Harris Bank through the holding company BMO Financial Corporation.

12.    Defendant Kforce Flexible Solutions, LLC ("Kforce") is a for profit Florida limited liability company qualified to do business in Illinois.

13.    Kforce works with companies, including BMO Harris, that require large volume work forces. Kforce employees and managers assist and help manage a company's telephone-dedicated staffing needs and manage recruitment, selection, training, planning, retention and management reporting of those phone-based employees.

14.    During the class period, Kforce provided BMO Harris with staffing and in-house services related to the human resources processes, from worker recruitment and selection to introduction, planning and management of workers, including of the Plaintiff and similarly situated employees.

15.    Kforce issued paychecks to Plaintiff and the similarly situated employees.

16.    Defendants employed Plaintiff and other similarly situated persons as "employees," as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e), Section 3(d) of the IMWL, 820 ILCS § 105/3(d), and Section 2 of the IWPCA, 820 ILCS § 115/2.

17.    At all relevant times, each Defendant was an "employer" of Plaintiff and other similarly situated persons, as that term is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d),

Section 3(c) of the IMWL, 820 ILCS § 105/3(c), and Section 2 of the IWPCA, 820 ILCS § 115/2.

## FACTUAL ALLEGATIONS

**A.** ***Defendants' Practice of Requiring and/or Permitting Telephone-Based Hourly Employees to Work Before the Start of Their Scheduled Shift Time***

18.      BMO Harris operates and has operated "call centers" in Illinois and elsewhere where telephone-dedicated employees similar to Plaintiff handle phone calls regarding banking and financial services offered by BMO Harris to its customers.

19.      BMO Harris and Kforce have an agreement to share the services of Plaintiff and similarly situated telephone-based employees.

20.      BMO Harris and Kforce earn revenue from the services of Plaintiff and other similarly situated telephone-dedicated employees.

21.      Prior to starting work on the call center floor, Plaintiff and other similarly situated telephone-based employees were and are interviewed by employees and managers of Kforce.

22.      BMO Harris and Kforce had the power to hire and fire Plaintiff and other persons similarly situated, with BMO Harris having ultimate approval as to whether a person works in its call centers.

23.      For workers placed at BMO Harris' call centers via Kforce, both BMO Harris and Kforce supervised and controlled the work schedule of Plaintiff and other similarly situated persons.

24.      For workers placed at BMO Harris' call centers via Kforce, BMO Harris and Kforce jointly determined the rate of pay for Plaintiff other similarly situated persons.

25.      For Plaintiff and certain of the workers placed at BMO Harris' call centers via Kforce, Kforce issued paychecks unless and until the workers became direct employees of BMO Harris, and both Defendants were involved in determining the actual amount of compensation paid

4

by the paycheck.

26.     At the BMO Harris call center where Plaintiff worked, BMO Harris had managers and supervisors, or their functional equivalent, on the floor of the call center during the workday, managing the work activities of the Plaintiff and other similarly situated persons.

27.     BMO Harris and Kforce jointly and collectively monitored, controlled and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

28.     Defendants generally prohibit and do not allow telephone-based employees to use their own personal cell phones on the call center floor.  Under Defendants' policies and practices, telephone-based employees are required to store their personal cell phones during the work day and can generally only use them on breaks and off the call center floor.

29.     At the Naperville, Illinois call center where Plaintiff worked, BMO Harris managers on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based employees arrived at their work stations before the start of their scheduled shift time, logged into BMO Harris' computers, and began working on their computers prior to the start of their scheduled shift time.

30.     Despite seeing and knowing that Plaintiff and similarly situated telephone-based employees performed work at their work stations prior to their scheduled shift time start, Defendants and their managers on the floor of the call center did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

31.     Defendants possess, control and/or have access to information and electronic data that shows the times Plaintiff and similarly situated telephone-based employees logged into their computers each day and the time they logged into their telephone systems.

32.     By possessing, controlling and/or accessing this information, Defendants knew that Plaintiff and similarly situated telephone-based employees worked prior to the start of their scheduled shift time.

33.     Despite having this information and knowing that Plaintiff and similarly situated telephone-based employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, Defendants did not make any meaningful effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

34.     Defendants knowingly required and/or permitted Plaintiff and those similarly situated to her to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, and completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times.

35.     In addition, by having managers on the call center floor and having access to the electronic data, among other things, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their meal break periods, for which they were not paid.  The work that Plaintiff and similarly situated employees performed during meal break periods includes, but is not limited to, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

36.     The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately 15 minutes per day per person.

37.     Defendants monitored and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

   **B.     *Defendants Knew of and Assented to the Pre-Shift Work***

38.     Defendants' policy and practice permits and/or requires telephone-based employees to be logged into their phones by the employee's scheduled start time.

39.     In order to be logged into BMO Harris' telephone systems, Defendants required and/or permitted Plaintiff and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions.

40.     Defendants' policy and practice is to discipline telephone-based employees if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

41.     This policy and practice of Defendants results in telephone-based employees, including the Plaintiff, to boot up their computers, initialize several software programs and/or read company emails and instructions prior to their start of their scheduled shift time.

42.     As set forth herein, via their policies and practices and through their own telephone and computer systems, Defendants knew and were aware that the telephone-based employees performed work prior to the start of their scheduled shift.

43.     Defendants did not instruct Plaintiff and similarly situated telephone-based employees to not log into their computers or telephone, or to not read company emails prior to the start of their scheduled shift time. Rather, Defendants required, permitted and/or allowed Plaintiff and the putative class members to work prior to their scheduled shift time.

44.     By knowing of, permitting and/or requiring Plaintiff and similarly situated telephone-based employees to log into their computers, initialize their various software programs

and/or read company email and instructions prior to the start of their scheduled shift time, Defendants assented to them performing this work.

### C. Defendants' Failure to Pay Regular and/or Overtime Wages to Their Telephone-Based Hourly Employees

45. Defendants determined the rate of pay for Plaintiff other similarly situated persons.

46. BMO Harris' and Kforce's managers reviewed work times prior to BMO Harris and Kforce approving paychecks before they were issued.

47. Defendants supervised and controlled the work schedule of Plaintiff and other similarly situated persons by setting the work schedules of those persons and requiring them to be at their work stations and ready to handle calls at the start of their scheduled shift time.

48. Both Defendants determined the actual amount of compensation paid by the paycheck.

49. Plaintiff and those employees similarly situated are individuals who were, or are, employed by Defendants in customer service, sales, and similar positions at BMO Harris' call centers who were not paid for some or all of their work activities prior to the beginning of their shifts, during meal breaks, or after the end of their shifts.

50. When Plaintiff and similarly situated telephone-dedicated employees are at work at BMO Harris' call centers, there is no way to tell the difference between direct hires of BMO Harris and other telephone-dedicated workers who are placed at the call center through Kforce.

51. Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of providing banking and financial services offered by BMO Harris to its customers while working in BMO Harris' call centers. Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

8

52.     Plaintiff and the other employees are also similar because Defendants did not pay them for all time they actually worked.  Defendants knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls.  Additionally, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their meal break periods, for which they were not paid.

53.     The net effect of Defendants' policies and practices, instituted and approved by company managers, is that Defendants willfully failed to pay regular and overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs.  Defendants thus enjoyed ill-gained profits at the expense of their hourly employees.

54.     Plaintiff and others similarly situated at times work or worked in excess of forty hours per week for Defendants in a given workweek.

55.     Defendants' policy and practice of requiring and/or permitting their employees, including Plaintiff and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206, Section 4 of the IMWL, 820 ILCS § 105/4, and Section 4 of the IWPCA, 820 ILCS § 115/4.

56.     Defendants' policy and practice of requiring their employees to perform work without pay in many instances has caused and continues to cause Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207, and Section 4a of the IMWL, 820 ILCS § 105/4a.

57. Defendants' failure to compensate their non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

58. Defendants' non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

**D. Defendants' Failure to Pay Agreed-Upon Hourly Rates For Work To Which Defendants Assented**

59. At all times relevant hereto, Defendants paid, and agreed to pay, Plaintiff and similarly situated employees in Illinois more than the federal and state minimum wage.

60. For example, Defendants agreed to pay Plaintiff Shepard $14.00 per hour for all work Defendants permitted and/or required of her, which is more than the applicable federal and state minimum wage.

61. At all times relevant hereto, Defendants agreed to pay Plaintiff and a class of similarly situated Illinois employees more than the state minimum wage for all work permitted and/or required by Defendants.

62. At all times relevant hereto, Defendants agreed to compensate their hourly employees for all "work" that Defendants required and/or permitted.

63. Booting up computers, initializing several software programs, reading company email or instructions, and completing customer service calls is "work" for which Plaintiff and similarly situated Illinois employees are entitled to their agreed-upon rate of pay. Additionally, working during meal breaks and completing calls and logging off their phones and computers is "work" for which Plaintiff and similarly situated Illinois employees are entitled to their agreed-upon rate of pay.

64. Despite their agreement to pay Plaintiff and similarly situated Illinois employees

more than the statutory minimum wage for their work, and despite assenting to the work described herein, Defendants did not pay Plaintiff and certain other similarly situated Illinois employees their agreed-upon rate for performing all work permitted, required and/or assented to by Defendants. This work includes the time spent booting up their computers, initializing their software programs for their calls, and reading company email and instructions prior to the start of their scheduled shift time; the time spent completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times; and the meal break time spent finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

65.     Defendants' failure to compensate Plaintiff and other similarly situated Illinois employees at their agreed-upon wage for work they permitted, required and/or assented to has caused Plaintiff and other similarly situated employees to suffer harm.

## COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiff brings Count I of this Complaint as a collective action on behalf of herself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay.

67.     Plaintiff has actual knowledge that FLSA Class Members have been denied overtime pay for hours worked over forty hours per workweek.  That is, Plaintiff worked with other telephone dedicated employees who worked at BMO Harris' call center.  As such, she has first-hand personal knowledge that the same pay violations occurred to other class members. Furthermore, other telephone dedicated employees at BMO Harris call centers have shared with her similar pay violation experiences as those described in this complaint.

68.     Other employees similarly situated to Plaintiff work or have worked at BMO Harris

call centers, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

69.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

70.     FLSA Class Members perform or have performed the same or similar work as Plaintiff.

71.     FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.  For example, Plaintiff Shepard worked at least 40 hours during the workweeks of October 20, 2014 to October 26, 2014, November 17, 2014 to November 23, 2014, December 1, 2014 to December 7, 2014, December 8, 2014 to December 14, 2014, and December 15, 2014 to December 21, 2014.

72.     FLSA Class Members are not exempt from receiving overtime pay at the federally mandated wage rate under the FLSA.

73.     As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of overtime and wages.

74.     Defendants' failure to pay the overtime compensation wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

75.     The experiences of Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

76.     The specific job titles or precise job responsibilities of each FLSA Class Member

do not prevent collective treatment.

77.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

78.     Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all FLSA Class Members.

79.     As such, Plaintiff's counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendants as telephone-dedicated employees, however titled, and who were compensated, in part or in full, on an hourly basis throughout the United States at any time between August 23, 2013 and the present who did not receive the full amount of overtime wages earned and owed to them.

80.     There are questions of law or fact common to the employees described in paragraph 79.

81.     Plaintiff is similarly situated to the employees described in paragraph 79, as Plaintiff's claims are typical of the claims of those persons.

82.     Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 79.

83.     This is not a collusive or friendly action.  Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect the interests of the persons described in paragraph 79.

84.     A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

85.     At all relevant times, Defendants employed Plaintiff and the persons described in paragraph 79.

## CLASS ACTION ALLEGATIONS

86.     Plaintiff brings Counts II and III as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay.

87.     With respect to Plaintiff's IMWL claims, Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendants as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between August 23, 2013 and the present who did not receive the full amount of overtime wages earned and owed to them (the "IMWL Class").

88.     With respect to Plaintiff's IWPCA claim, Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendants as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between August 23, 2006 and the present whose hourly rate exceeded the applicable Illinois minimum wage and who did not receive the full amount of wages earned and owed to them (herein the "IWPCA Class").

89.     This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the IMWL Class and IWPCA Class are so numerous that joinder of all class members is impracticable.

90.     Plaintiff and the members of the IMWL and IWPCA Classes have been equally affected by Defendants' practice of not compensating employees for all time worked.

91.     Plaintiff and the members of the IMWL and IWPCA Classes have been equally affected by Defendants' failure to pay all earned wages to Plaintiff and the class members.

92.     Furthermore, members of the IMWL and IWPCA Classes still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

93. The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations that may exist between members of the Classes, if any.

94. Plaintiff and the members of the IMWL and IWPCA Classes, as well as Defendants, have a commonality of interest in the subject matter and the remedy sought.

95. Plaintiff is able to fairly and adequately represent and protect the interests of the members of the IMWL and IWPCA Classes. Plaintiff's counsel are competent and experienced in litigating large wage and hour and other employment class actions.

96. If individual actions were required to be brought by each member of the Classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the IMWL and IWPCA Classes, to the Court, and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Classes are entitled.

97. Plaintiff has retained counsel experienced in complex employment litigation and in class action litigation.

98. Plaintiff and her counsel will fairly and adequately protect the interest of both classes.

**COUNT I – FLSA**
**(Failure to Pay Overtime Wages)**

99. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 85 as paragraph 99 of this Count I.

100. Plaintiff, individually and on behalf and the members of the class described in paragraph 79, asserts claims for unpaid overtime pursuant to the FLSA.

101. At any and all times relevant hereto, each Defendant was an "enterprise engaged in

commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

102.    At any and all times relevant hereto, each Defendant was an "employer" of Plaintiff and the members of the class described in paragraph 79 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

103.    At any and all times relevant hereto, Plaintiff and the members of the class described in paragraph 79 were "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e)

104.    Plaintiff and the members of the class described in paragraph 79 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

105.    At all times relevant hereto, Defendants' failure to pay Plaintiff and the members of the class described in paragraph 79 premium pay for all time worked over 40 hours in a week was willful in that, among other things, Defendants knew that the FLSA required them to pay time and one-half for all time worked over 40 hours in a week, Defendants' managers and employees knew the putative class members worked before the start of their scheduled shift times, and Defendants failed to maintain true and accurate time records.

106.    As a direct and proximate result thereof, Plaintiff and the members of the class described in paragraph 79 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action, and as follows:

    a.  Declare and find that the Defendants committed one or more of the following acts:

        i.  Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

        ii.  Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

    b.  Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

    c.  Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party plaintiffs;

    d.  Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

    e.  Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

    f.  Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

    g.  Grant such further relief as the Court deems just and equitable.

### COUNT II – ILLINOIS MINIMUM WAGE LAW
### (Failure to Pay Earned Overtime Wages)

107.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 65, 71 and 86 through 98 as paragraph 107 of this Count II, as if fully set forth herein.

108.    This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1367.

109.    The matters set forth in this Count II arise from Defendants' violation of the overtime compensation provisions of the Illinois Minimum Wage Law, 820 ILCS § 105/4a. Plaintiff brings this action on her own behalf and on behalf of the members of the IMWL Class pursuant to 820 ILCS § 105/12(a).

110.    Defendants employed Plaintiff and other similarly situated telephone-dedicated workers as "employees," as the term "employee" is defined Section 3(d) of the IMWL, 820 ILCS

§ 105/3(d).

111.     At all relevant times, each Defendant was an "employer" of Plaintiff and other similarly situated telephone-dedicated workers, as the term "employer" is defined by Section 3(c) of the IMWL, 820 ILCS § 105/3(c).

112.     Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiff and the members of the IMWL Class worked in excess of forty (40) hours, Plaintiff and members of the IMWL Class were entitled to be compensated at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

113.     Defendants did not pay Plaintiff and members of the IMWL Class one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

114.     Defendants violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff and the members of the IMWL Class at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

115.     Pursuant to 820 ILCS § 105/12(a), Plaintiff and the members of the IMWL Class are entitled to recover statutory penalties in the amount of two percent (2%) per month of the amount of underpayments.

     WHEREFORE, Plaintiff and the members of the IMWL Class pray for a judgment against Defendants as follows:

     a.  That the Court determine that this action may be maintained as a class action.

     b.  A judgment in the amount of one and one-half times Plaintiff's and the members of the IMWL Class' regular rate for all time they worked in excess of forty (40) hours per week;

     c.  Statutory damages pursuant to the formula set forth in 820 ILCS § 105/12(a);

     d.  Reasonable attorneys' fees and costs incurred in filing this action; and

e.    Such other and further relief as this Court deems appropriate and just.

## COUNT III – ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Failure to Pay the Agreed Upon Rate For Work Assented to by Defendants)

116.    Plaintiff hereby re-allege and incorporate by reference paragraphs 1 through 65 and 86 through 98 as paragraph 116 of this Count III as if fully set forth herein.

117.    Plaintiff, individually and on behalf of all others similarly situated, brings this Count III to recover from Defendants unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

118.    At all times relevant, and at Defendants' request, Plaintiff and the members of the putative IWPCA Class performed work for Defendants.

119.    As set forth *supra*, Defendants assented to pay Plaintiff and the members of the putative IWPCA Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage Law hourly rate, for all work Defendants permitted and/or required.

120.    As set forth *supra*, Defendants assented to the hourly employees performing the work described above by, among other means, Defendants' knowledge and awareness of the pre- and post-shift work described herein, as well as the work performed during meal breaks.

121.    Defendants regularly observed, without objection or negative comment, the record and documentation of having Plaintiff and the members of the putative IWPCA Class perform work prior to the start of their scheduled shift time, during meal breaks, and after the end of their scheduled shift time.

122.    During the course of their employment with Defendants, Plaintiff and similarly situated Illinois employees had an agreement with Defendants within the meaning of the IWPCA to be compensated for all time worked at the rates agreed to by the parties.  Defendants did not

pay Plaintiff or similarly situated Illinois employees for all hours worked at the rates agreed to by the parties as described herein.

123.     Plaintiff and the putative IWPCA Class members were entitled to be paid for all time worked at the rate agreed to by the parties.

124.     When Defendants hired Plaintiff and the members of the putative IWPCA Class and advised them of the specific hourly rate they would be paid, Defendants did not inform Plaintiff and the members of the putative class that they would not be paid for all the work Defendants required and/or permitted.

125.     Defendants have failed to pay Plaintiff and the members of the putative IWCPA Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, because Defendants did not pay them for the work described herein, in violation of the IWPCA, 820 ILCS § 115/4.

126.     Defendants have failed to pay Plaintiff and the putative IWPCA Class the full amount for all hours worked because of the improper practices described herein.

127.     Illinois Statutes 820 ILCS §§115/1 *et seq.* defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties…".

128.     Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses…and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties." 820 ILCS § 115/2.

129.     Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after

the end of the pay period in which such wages were earned. Illinois Statutes 820 ILCS §115/5 provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

130. Defendants violated Illinois Statutes 820 ILCS §§115/1 *et seq.* by regularly and repeatedly failing to properly compensate Plaintiff and the putative IWPCA Class members for the actual time they worked each week within 13 days of the date such compensation was earned and by failing to properly compensate Plaintiff and the putative IWPCA Class members their rightful wages by the next scheduled payday after their separation.

131. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the putative IWPCA class have suffered and will continue to suffer lost wages and other damages.

WHEREFORE, Plaintiff and the members of the IWPCA Class pray for a judgment against Defendants as follows:

    a. That the Court determine that this Count III may be maintained as a class action;

    b. A judgment in the amount of all back wages due, as provided by the Illinois Wage Payment and Collection Act;

    c. Statutory damages pursuant to the formula set forth in 820 ILCS § 115/14(a);

    d. Reasonable attorneys' fees and costs incurred in filing this action; and

    e. Such other and further relief as this Court deems appropriate and just.

Dated: August 23, 2016

Respectfully submitted,

/s/ Thomas M. Ryan
One of Plaintiff's attorneys

21

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
312.201.0575

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
312.726.3400